UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | | |
|---|---|---|
| CYNTHIA M. TACKER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | Case No. 2:20-CV-00059-SPM |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| Acting Commissioner of Social Security,[1] | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This is an action under 42 U.S.C. § 405(g) for judicial review of the final decision of Defendant Kilolo Kijakazi, Acting Commissioner of Social Security (the "Commissioner") denying the application of Plaintiff Cynthia Tacker ("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, The parties consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 5). Because I find the decision denying benefits was not supported by substantial evidence, I will reverse the Commissioner's denial of Plaintiff's application and remand the case for further proceedings.

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted, therefore, for Andrew Saul as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I.   PROCEDURAL BACKGROUND

In July 2018, Plaintiff applied for DIB, alleging that she was unable to work due to a bulging disk in her back, stenosis, pinched nerves, deafness in her right year, vertigo, tinnitus, depression, arthritis, muscle spasm, and numbness and tingling in her hands. (Tr. 171-72, 196). Her amended disability onset date is April 30, 2018. (Tr. 186). Her application was initially denied. (Tr. 100-04). Plaintiff filed a Request for Hearing by Administrative Law Judge (ALJ) (Tr. 107-08). On January 16, 2020, the ALJ held a hearing on Plaintiff's claim. (Tr. 26-82). On March 4, 2020, the ALJ issued an unfavorable decision, finding Plaintiff not disabled from April 30, 2018, through the date of the decision. (Tr. 7-24). On August 4, 2020, the Appeals Council denied Plaintiff's request for review of the decision. (Tr. 1-4). The decision of the ALJ stands as the final decision of the Commissioner of the Social Security Administration, and Plaintiff now seeks judicial review of that decision.

## II.   FACTUAL BACKGROUND[2]

At the January 2020 hearing before the ALJ, Plaintiff testified as follows. (Tr. 28-68). Plaintiff has tingling and numbness in her thumb and two fingers, and less often in her shoulder and harm. (Tr. 42-43). This occurs mostly on her right side, and she is right-handed. (Tr. 43). Plaintiff also has pain in the right side of her neck, down through her shoulder blade. (Tr. 47).

Plaintiff last worked in April 2018, as a hair stylist at a nursing home. (Tr. 36). She stopped working there because she started dropping combs, curling irons, and scissors. (Tr. 39, 43). She tried cutting her hours, but it did not help; she was still having the issues. (Tr. 39-40). Things fall out of her hand "like [she doesn't] have control," and she has problems with dishes and silverware.

---

[2] Because Plaintiff's arguments for reversal relate primarily to the ALJ's findings with regard to the impairments that affect Plaintiff's upper extremities, the Court focuses primarily on the facts relevant to those impairments.

(Tr. 42-43). She sometimes does not have the strength to unscrew the top of a gallon of milk. (Tr. 64). S

Plaintiff goes to a pain management clinic (Tr. 46), gets injections in her neck (Tr. 43), and sees a chiropractor. (Tr. 46). The first injection helped quite a bit, but she has had several since then, and they don't seem to last as long. (Tr. 44). At the hearing, her fingers were tingly. (Tr. 44). Plaintiff testified that a doctor suggested surgery, and her chiropractor talked her out of it. (Tr. 45).

In addition to her neck, arm, and finger problems, Plaintiff also has other conditions, including complete loss of hearing in her right ear, vertigo, depression, pancreatitis, stenosis in her right big toe, and Epstein-Barr. (Tr. 40-41, 49, 52).

The Court will cite to specific medical and other records as necessary to address the parties' arguments.

### III.     STANDARD FOR DETERMINING DISABILITY UNDER THE ACT

To be eligible for benefits under the Social Security Act, a claimant must prove he or she is disabled. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Sec'y of Health & Hum. Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). Under the Social Security Act, a person is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). *Accord Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The impairment must be "of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he [or she] lives, or whether a specific job vacancy exists for

him [or her], or whether he [or she] would be hired if he [or she] applied for work." 42 U.S.C. § 423(d)(2)(A).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. 20 C.F.R. § 404.1520(a); *see also McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011) (discussing the five-step process). At Step One, the Commissioner determines whether the claimant is currently engaging in "substantial gainful activity"; if so, then the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(i); *McCoy*, 648 F.3d at 611. At Step Two, the Commissioner determines whether the claimant has "a severe medically determinable physical or mental impairment that meets the [twelve-month duration requirement in § 404.1509], or a combination of impairments that is severe and meets the duration requirement"; if the claimant does not have a severe impairment, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(ii),; *McCoy*, 648 F.3d at 611. To be severe, an impairment must "significantly limit[] [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). At Step Three, the Commissioner evaluates whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings"). 20 C.F.R. § 404.1520(a)(4)(iii); *McCoy*, 648 F.3d at 611. If the claimant has such an impairment, the Commissioner will find the claimant disabled; if not, the Commissioner proceeds with the rest of the five-step process. 20 C.F.R. § 404.1520(d); *McCoy*, 648 F.3d at 611.

Prior to Step Four, the Commissioner assesses the claimant's residual functional capacity ("RFC"), 20 C.F.R. § 404.1520(a)(4), which "the most [a claimant] can still do despite [his or her] limitations," 20 C.F.R. § 404.1545(a)(1). *See also Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009). At Step Four, the Commissioner determines whether the claimant can return to his or her past relevant work, by comparing the claimant's RFC with the physical and mental demands of

the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f); *McCoy*, 648 F.3d at 611. If the claimant can perform his or her past relevant work, the claimant is not disabled; if the claimant cannot, the analysis proceeds to the next step. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f); *McCoy*, 648 F.3d at 611. At Step Five, the Commissioner considers the claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work in the national economy; if the claimant cannot make an adjustment to other work, the claimant will be found disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 404.1560(c)(2); *McCoy*, 648 F.3d at 611.

Through Step Four, the burden remains with the claimant to prove that he or she is disabled. *Moore*, 572 F.3d at 523. At Step Five, the burden shifts to the Commissioner to establish that, given the claimant's RFC, age, education, and work experience, there are a significant number of other jobs in the national economy that the claimant can perform. *Id.*; *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. § 404.1560(c)(2).

## IV.     THE ALJ'S DECISION

Applying the foregoing five-step analysis, the ALJ here found that Plaintiff met the insured status requirements of the Act through September 30, 2021; that Plaintiff has not engaged in substantial gainful activity since April 30, 2018, the amended alleged onset date; that Plaintiff had the severe impairments of cervical degenerative disc disease and hearing impairment in right ear; and that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1 (Tr. 12-15). The ALJ found that Plaintiff had the following RFC:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that she could not climb on ropes, ladders, or scaffolds. The claimant could occasionally crawl. The claimant could frequently balance and climb on ramps and stairs. The claimant should avoid even moderate

> exposure to noise. The claimant should avoid concentrated exposure to vibration and work hazards, such as unprotected heights and being around dangerous, moving machinery. The claimant is able to occasionally finger with the right upper extremity.

(Tr. 15). At Step Four, the ALJ found that Plaintiff was unable to perform any of her past relevant work. (Tr. 18). At Step Five, relying on the testimony of a vocational expert, the ALJ found that there are jobs that exist in significant number in the national economy that Plaintiff could perform, including router, toll collector, and ticket taker. (Tr. 19-20). Accordingly, the ALJ found that Plaintiff had not been under a disability, as defined in the Act, from April 15, 2014, through the date of the decision. (Tr. 34).

## V.   DISCUSSION

Plaintiff argues that the ALJ's decision should be reversed for several reasons, including that the ALJ did not properly evaluate the opinions of Plaintiff's treating physician, especially as it relates to Plaintiff's limitations in the use of her upper extremities; that the RFC did not sufficiently account for Plaintiff's upper extremity impairments that limit her ability to handle, grasp, finger, and reach; and that the testimony of the vocational witness was misleading, contradictory, and confusing.

### A.  Standard for Judicial Review

The decision of the Commissioner must be affirmed if it "complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole." *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (quoting *Ford v. Astrue*, 58 F.3d 979, 981 (8th Cir. 2008)); *see also* 42 U.S.C. § 405(g). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence is less than a

6

preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Pate-Fires*, 564 F.3d at 942 (quotation marks omitted). *See also Biestek*, 139 S. Ct. at 1154 ("Substantial evidence . . . means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'") (quoting *Consol. Edison*, 305 U.S. at 229).

In determining whether substantial evidence supports the Commissioner's decision, the court considers both evidence that supports that decision and evidence that detracts from that decision. *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir. 2012). However, the court "'do[es] not reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'" *Id.* at 1064 (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).

## B.  The RFC Assessment Was Not Supported by Substantial Evidence

A claimant's RFC is "the most a claimant can do despite [the claimant's] limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)). "The ALJ must assess a claimant's RFC based on all relevant, credible evidence in the record, 'including the medical records, observations of treating physicians and others, and an individual's own description of his limitations.'" *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) (quoting *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)).

Plaintiff argues that the ALJ's RFC finding that Plaintiff could perform only occasional fingering but had no limitations in handling is not supported by substantial evidence. After careful review of the record, the Court agrees.

Plaintiff's treating doctor, Dr. Kondo, offered numerous opinions regarding Plaintiff's physical functioning, including a statement that Plaintiff could only finger, handle, and reach occasionally. (Tr. 581-84). On the form he filled out, "handling" is defined as "seizing, holding, grasping, turning, or otherwise working with the hand or hands. Fingers are involved only to the extent that they are an extension of the hand." (Tr. 583). "Fingering" is defined as "Fine movements of small objects require use of the fingers, e.g., to pick or pinch." (Tr. 583). These definitions are consistent with Social Security Ruling 85-15, which states:

> Reaching, handling, fingering, and feeling require progressively finer usage of the upper extremities to perform work-related activities. Reaching (extending the hands and arms in any direction) and handling (seizing, holding, grasping, turning or otherwise working primarily with the whole hand or hands) are activities required in almost all jobs. Significant limitations of reaching or handling, therefore, may eliminate a large number of occupations a person could otherwise do. . . . "Fingering" involves picking, pinching, or otherwise working primarily with the fingers. It is needed to perform most unskilled sedentary jobs and to perform certain skilled and semiskilled jobs at all levels of exertion.

Social Security Ruling 85-15, 1985 WL 56857, at *7 (S.S.A. 1985).

The ALJ found Dr. Kondo's opinion "not persuasive except for the finding of occasional fingering per the testimony of ongoing tingling in her right fingertips," (Tr. 17), and the ALJ incorporated the occasional limitation on fingering in the right hand into the RFC assessment; the ALJ did not incorporate any limitation in handling. The ALJ also mentioned Plaintiff's description of tingling in her "fingertips" at three other points in the decision. (Tr. 16, 18).

It is reasonable to conclude that a person with tingling or numbness in her fingertips might have a problem with the ability to "finger" (pick or pinch), while having little or no problem with

the ability to "handle" (seize, hold, grasp, or turn). But Plaintiff did not actually testify that she had tingling in her "fingertips"; instead, she testified that she had tingling and numbness in her right "fingers" (Tr. 42-44) and her "hands" (Tr. 60). Similarly, in her Disability Report, she alleged "numbness and tingling in hands" (Tr. 196), and in her Function Report, she reported problems with tingling in her "hands" (Tr. 231) and problems "using hands" (Tr. 236), not problems specifically with her fingertips or with pinching or other fine manipulation. Her treatment providers' notes discuss problems with her "fingers" or her "hands and fingers" not her fingertips. (Tr. 307, 369, 371, 442, 446, 448, 451, 455). In addition, Plaintiff testified that she stopped working because she was dropping curling irons, combs, and scissors (Tr. 39, 42-43); that she still had problems where things "just fall[] out of your hand like you don't have control," such as dishes and silverware (Tr. 43); and that she sometimes could not unscrew the lid on a gallon of milk (Tr. 64)—all of which appear to be problems with seizing, holding, grasping, or turning.

The above evidence, which apparently led the ALJ to find that Plaintiff had a limitation on the ability to "finger" with the right hand, at least equally supports a finding that she had a limitation on the ability to "handle" with the right hand. Neither the ALJ nor defendant has directed the Court to any evidence in the record to support a finding that Plaintiff has a greater ability to "handle" than to "finger," nor has the Court found any. The ALJ also provides no explanation for this distinction in his decision.

The Court acknowledges that the ALJ was not required to credit all of the opinions in Dr. Kondo's opinion, nor was he required to credit all of Plaintiff's testimony. However, the ALJ is not entitled to "pick and choose only evidence in the record buttressing his [or her] conclusion." *Nelson v. Saul*, 413 F. Supp. 3d 886, 916 (E.D. Mo. 2019) (internal quotation marks omitted). *See also Taylor ex rel. McKinnies v. Barnhart*, 333 F.Supp.2d 846, 856 (E.D. Mo. 2004) ("The ALJ is

not entitled to pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability.") (quoting *Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004)). Here, the ALJ did not cite any evidence or provide any reasoning that explains why the ALJ chose to include the limitation on fingering but not the limitation on handling, and the Court finds that decision was not supported by substantial evidence.

Further, the ALJ's error does not appear harmless. "An error is harmless when the claimant fails to 'provide some indication that the ALJ would have decided differently if the error had not occurred.'" *Lucus v. Saul*, 960 F.3d 1066, 1069 (8th Cir. 2020) (quoting *Byes v. Astrue*, 687 F.3d 913, 917 (8th Cir. 2012)). The vocational expert testified at the hearing that if a hypothetical person with Plaintiff's other limitations was also limited to occasional handling, there would be no work available. (Tr. 79). Thus, it appears likely that, had the ALJ included a limitation to occasional handling in the RFC, the outcome of the disability determination might have been different.

For all of the above reasons, the Court finds that the decision of the ALJ is not supported by substantial evidence, and this case must be remanded for further consideration of Plaintiff's limitations in her upper right extremity. Because remand is required, the Court will not address Plaintiffs' remaining arguments.

**VI.   CONCLUSION**

For the reasons set forth above, the Court finds that the decision of the Commissioner is not supported by substantial evidence. Accordingly,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the decision of the Commissioner of Social Security is **REVERSED** and that this case is **REMANDED** under Sentence Four of 42 U.S.C. § 405(g) for reconsideration and further proceedings consistent with this opinion.

SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 15th day of March, 2022.